# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **TOM AMROLLAH, a/k/a MOHAMMAD HASSAN AMROLLAH-MAJDABADI,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **JANET NAPOLITANO, Secretary,** | § | **SA-09-CV-0952 FB (NN)** |
| **Department of Homeland Security;** | § | |
| **ALEJANDRO MAYORKAS, Director of** | § | |
| **Citizenship and Immigration Services;** | § | |
| **GERARD HEINAUER, Director of the** | § | |
| **Nebraska Service Center for Citizenship** | § | |
| **and Immigration Services;** | § | |
| **ROBERT MUELLER, Director of the** | § | |
| **Federal Bureau of Investigation; and** | § | |
| **ERIC HOLDER, United States** | § | |
| **Attorney General,** | § | |
| | § | |
| **Defendants.** | § | |

## SECOND REPORT AND RECOMMENDATION

**TO:    Honorable Fred Biery**
**Chief United States District Judge**

This report and recommendation considers the defendants' second motion to dismiss.[1]

The motion addresses the relief sought in plaintiff Tom Amrollah's amended complaint.  In the

amended complaint, Amrollah—an Iranian national—complained about the denial of his

application to register permanent residence or adjust status.[2]  As defendants, Amrollah named:

(1) Gerard Heinauer, the Director of the Nebraska Service Center for United States Citizenship

---

[1]Docket entry # 12.

[2]Docket entry # 9.

and Immigration Services (USCIS); (2) Alejandro Mayorkas, the Director of USCIS; (3) Janet Napolitano, Secretary of the Department of Homeland Security; (4) Robert Mueller, Director of the Federal Bureau of Investigations; and (5) Eric Holder, Attorney General of the United States.

Amrollah—along with his wife, daughter and son—were granted asylum status in 1999.[3] The family applied to register permanent residence or adjust status in 2000.[4]  The daughter's application was approved in 2004; the son's application, in 2005.[5]  Amrollah and his wife filed this action on December 1, 2009, and asked the district court to compel the defendants to adjudicate their applications.[6]  Subsequently, defendant Heinauer granted the wife's application[7] and issued Amrollah notice of intent to deny his application.  The notice was based on a determination that Amrollah provided material support to a terrorist organization.[8]  Amrollah responded on March 16, 2010, that he never provided material support to a terrorist organization.[9]  Amrollah's application was denied on June 1, 2010.[10]  Amrollah amended his complaint to drop his wife as a plaintiff and change the relief he seeks.  The amended complaint asked the district court to vacate the denial of his application and declare that he is not

---

[3]Docket entry # 1, ¶ 18.

[4]*Id*. at ¶ 19.

[5]*Id*. at ¶¶ 20 & 22.

[6]*Id*. at ¶ 29.

[7]Docket entry # 9, ¶ 8.

[8]*Id*. at ¶ ¶ 26-27.

[9]*Id*. at ¶ 28.

[10]*Id*. at ¶ 29.

inadmissible.

The defendants moved for dismissal of the amended complaint under Rule 12(b)(1) for lack of subject matter jurisdiction[11] and Rule 12(b)(6) for failure to state a claim.[12]  The defendants argued that the court lacks jurisdiction because 8 U.S.C. § 1182(d)(3)(B)(I) precludes the court's review of adjustment-status denials based on terrorism-related inadmissibility determinations.  Because it maintains that the court lacks jurisdiction to consider the denial of Amrollah's application, the defendants argue that Amrollah failed to state a claim upon relief may be granted.  Amrollah maintains section 1182(d)(3)(B)(I) applies only to decisions to grant or deny a waiver of a ground of inadmissibility.[13]

There is a "strong presumption that Congress intends judicial review of administrative action."[14]  For the [defendants] to prevail [they] must overcome . . . the strong presumption in favor of judicial review of administrative action . . . ."[15]  The Administrative Procedure Act provides for judicial review except where precluded by statute or when the administrative action is committed to agency discretion by law.[16]  Defendants argue that the judicial review is barred here by section 1182(d)(3)(B)(I).

The government presented this argument to two other federal district courts recently

---

[11]Fed. R. Civ. P. 12(b)(1).

[12]Fed. R. Civ. 12(b)(6).

[13]Docket entry # 14, p. 5.

[14]*Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986).

[15]*I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001).

[16]5 U.S.C. §701(a).

without success.  After considering whether a court has jurisdiction to review the denial of an

application for adjustment status based on a determination that the applicant provided material

support to a terrorist organization, those courts determined that section 1182(d)(3)(B)(I) makes

unreviewable only a determination by the Secretary of State or the Secretary of Homeland

Security to waive terrorism-related grounds of inadmissibility[17]—a decision not at issue in this

case.

The disputed provision reads as follows:

The Secretary of State, after consultation with the Attorney General and the
Secretary of Homeland Security, or the Secretary of Homeland Security, after
consultation with the Secretary of State and the Attorney General, *may determine*
in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) of this
section shall not apply with respect to an alien within the scope of that subsection
or that subsection (a)(3)(B)(vi)(III) of this section shall not apply to a group within
the scope of that subsection, except that no such <u>waiver</u> may be extended to an
alien who is within the scope of subsection (a)(3)(B)(i)(II) of this section, no such
<u>waiver</u> may be extended to an alien who is a member or representative of, has
voluntarily and knowingly engaged in or endorsed or espoused or persuaded
others to endorse or espouse or support terrorist activity on behalf of, or has
voluntarily and knowingly received military-type training from a terrorist
organization that is described in subclause (I) or (II) of subsection (a)(3)(B)(vi) of
this section, and no such <u>waiver</u> may be extended to a group that has engaged
terrorist activity against the United States or another democratic country or that
has purposefully engaged in a pattern or practice of terrorist activity that is
directed at civilians. *Such a determination* shall neither prejudice the ability of the
United States Government to commence criminal or civil proceedings involving a
beneficiary of such a determination or any other person, nor create any substantive
or procedural right or benefit for a beneficiary of *such a determination* or any
other person. Notwithstanding any other provision of law (statutory or
nonstatutory), including section 2241 of Title 28, or any other habeas corpus
provision, and sections 1361 and 1651 of Title 28, no court shall have jurisdiction
to review *such a determination* or revocation except in a proceeding for review of
a final order of removal pursuant to section 1252 of this title, and review shall be

---

[17]*Singh v. Wiles*, No. C07-1151RAJ, 2010 U.S. Dist. LEXIS 41091, at * 14 (W.D. Wash. Apr.
27, 2010); *Ahmed v. Mayorkas*, No. C 08-1680 MHP, 2009 WL 6006104, at * 5-6 (N.D. Cal. Dec.
22, 2009).

limited to the extent provided in section 1252(a)(2)(D) of this title. The Secretary of State may not exercise the discretion provided in this clause with respect to an alien at any time during which the alien is the subject of pending removal proceedings under section 1229a of this title.[18]

Under the government's reading of the provision, the italicized term "such a determination" in the second and third sentences refers to determinations other than the waiver determination described in the first sentence.

In *Ahmed v. Mayorkas*, Judge Marilyn Hall Patel of the Northern District of California rejected this argument, describing the government's reading of the statute as "not only tortured but also illogical." According to Judge Patel, "[t]he first sentence [of the quoted provision] sets out authority to "determine" waivers, and the following sentences plainly refer to "such a determination."[19] That is, "such a determination" refers to a determination about whether to grant a waiver. Although the defendants insist section 1182(d)(3)(B)(I) provides for an exemption,[20] the provision uses the term "waiver," not "exemption."

In *Singh v. Wiles*,[21] Judge Richard A. Jones of the Western District of Washington similarly considered section 1182(d)(3)(B)(I) and rejected the government's argument, reasoning as follows:

The most likely meaning of "determination" in the jurisdiction-stripping sentence of § 1182(d)(3)(B)(I) . . . is the determination of the Secretary of State or [Department of Homeland Security] Secretary to grant a waiver to the terrorism-related grounds of inadmissibility specified in § 1182(a)(3)(B). The

---

[18]8 U.S.C. § 1182(d)(3)(B)(I) (underlining and italics added for discussion purposes).

[19]*Ahmed*, No. C 08-1680 MHP, 2009 WL 6006104, at *5.

[20]Docket entry # 12, p. 9.

[21]No. C07-1151RAJ, 2010 U.S. Dist. LEXIS 41091 (W.D. Wash. Apr. 27, 2010).

subsection in question strips courts of 'jurisdiction to review such a determination or revocation except in a proceeding for review of a final order of removal . . . ." The phrase "such a determination or revocation" suggests that the referenced determination has its antecedent in the subsection itself. The first sentence of § 1182(d)(3)(B)(I) permits either Secretary to "determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) shall not apply with respect to an alien . . . or that subsection (a)(3)(B)(vi)(III)) shall not apply to a group . . . ." This is the only instance in which § 1182(d)(3)(B)(I) uses the verb "determine" or a conjugate thereof. All subsequent instances (there are three) use the nominalization "such determination." Given the syntax, it is a stretch to construe "such determination" to refer to a determination other than the one stated at the outset of the subsection. . . .

USCIS insists that the "determination" to which the jurisdiction-stripping provision applies includes the determination that [an applicant] is inadmissible as an alien who has engaged in terrorist activity. The notion that "determination" in the jurisdiction-stripping provision might mean something other than the determination of whether to grant a terrorism-related inadmissibility waiver is not without support in the statute. § 1182(a)(3)(B) never uses a variation of the word "determine," casting doubt on USCIS's assertion that the "determination" of § 1182(d)(3)(B)(i)'s jurisdiction-stripping provision refers to any application of subsection a(3)(B). Nonetheless, § 1182(b)(1) uses a conjugate of "determine" to refer to the decision to deny an application for adjustment of status based on any of the grounds of inadmissibility in § 1182(a). In addition, the determination of whether to grant a terrorism-related exception is already committed to the "sole unreviewable discretion" of the named officials. The later protection in the same subsection of that "determination" from judicial review is arguably surplusage. It is arguably not surplusage, however, as the jurisdiction- stripping sentence expands judicial review by permitting review within the context of removal proceedings.[22]

Notably, USCIS—a defendant in this case and the two prior cases—did not appeal the prior decisions.  In this case, USCIS characterized both decisions as wrongly decided.[23]  Nevertheless, the unchallenged, prior decisions are primary, persuasive authority for the district court.

The Fifth Circuit applies "twin canons of statutory construction [in immigration cases],

---

[22]*Singh*, No. C07-1151RAJ, 2010 U.S. Dist. LEXIS 41091, at * 10-12 (internal citations omitted).

[23]Docket entry # 12, pp. 8 & 10.

one requiring narrow construction in favor of aliens, and the other requiring the clearest [congressional] command for jurisdiction stripping."[24]  The defendants rely on congressional intent to support their argument, but there is no legislative history indicating Congress intended to strip the courts of jurisdiction for reviews of adjustment-status denials based on terrorism-related inadmissibility determinations.[25]  In the absence of a clear congressional command stripping the court of jurisdiction, the district court may consider Amrollah's complaint.

**Recommendation**.  Two recent decisions address the issue before the district court.  The reasoning in those decisions is sound.  No reason exists to depart from the conclusions reached in those cases.  Accordingly, I recommend the district court similarly conclude that (1) the plain language of section 1182(d)(3)(B)(I) deprives the court of jurisdiction for reviewing waiver decisions, but not for reviewing adjustment-status denials based on terrorism-related inadmissibility determinations; and (2) in the absence of statute precluding judicial review, the district court may review Amrollah's complaint under the Administrative Procedures Act[26] and the Declaratory Judgment Act.[27]  Based on the foregoing discussion, I recommend DENYING

---

[24]*Vidal v. Gonzales*, 491 F.3d 250, 254 (5th Cir. 2007).

[25]The bill summary for Consolidated Appropriations Act of 2008—the legislation forming the basis of the defendants' argument—speaks in terms of "waiver," not in terms of adjustment-status denials based on terrorism-related inadmissibility determinations.  The bill summary provides as follows: "(Sec. 691) Amends the Immigration and Nationality Act to revise provisions respecting the Secretary's authority to waive terrorist-related grounds of inadmissibility."

[26]The Administrative Procedures Act provides for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court. . . ."  5 U.S.C. § 704.

[27]The Declaratory Judgments Act provides, "[i]n a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

the defendants' motion to dismiss (docket entry # 12).

I also recommend DISMISSING defendant Mueller.  The allegations against Mueller were based on the FBI's failure to timely investigate Amrollah and his family as applicants for permanent residency.  The investigations are complete.  The defendants argued that the allegations against Mueller are now moot.[28]  Amrollah did not challenge that characterization.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[29] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the

---

sought."  28 U.S.C. § 2201(a).

[28]Docket entry # 12, p. 12, n. 12.

[29]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

district court.[30]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[31]

      **SIGNED** on November 15, 2010.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[30]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[31]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).