**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **TOM AMROLLAH, a/k/a MOHAMMAD** | § | |
| **HASSAN AMROLLAH-MAJDABADI,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **JANET NAPOLITANO, Secretary,** | § | **SA-09-CV-0952 FB (NN)** |
| **Department of Homeland Security;** | § | |
| **ALEJANDRO MAYORKAS, Director of** | § | |
| **Citizenship and Immigration Services;** | § | |
| **GERARD HEINAUER, Director of the** | § | |
| **Nebraska Service Center for Citizenship** | § | |
| **and Immigration Services;** | § | |
| **ROBERT MUELLER, Director of the** | § | |
| **Federal Bureau of Investigation; and** | § | |
| **ERIC HOLDER, United States** | § | |
| **Attorney General,** | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION

**TO:    Honorable Fred Biery**
**Chief United States District Judge**

This report and recommendation considers the plaintiff's[1] and defendants'[2] cross-motions for summary judgment. I have authority to enter this report and recommendation under 28 U.S.C. § 636(b) pursuant to the district court's order of referral.[3] After considering the parties' submissions and the applicable law, I recommend granting the defendants' motion and denying the plaintiff's motion.

---

[1]Docket entry #38.

[2]Docket entry #37.

[3]Docket entry #3.

**Nature of the case.**  In 1979, when the Iranian revolution occurred, Plaintiff Tom Amrollah, then-known as Mohammed Hassan Amrollah-Majdabadi, worked as a pharmacist in Iran.  Because of his disagreements with the course taken by the new Iranian government, he began "provid[ing] medical assistance to the mojahedin movement,"[4] by supplying prescriptions to the group.[5]  Over the course of many years, Amrollah and members of his family were jailed, abused, and attacked by forces within the Iranian government.[6]  After receiving a subpoena to appear before an Iranian religious court in October 1996, Amrollah, his wife, and two children fled in fear of their lives to the United States.[7]  They entered near Eagle Pass, Texas on July 8, 1998.[8]

After being apprehended by United States border patrol agents,[9] Amrollah admitted to entering illegally but sought asylum.[10]  On January 13, 1999, Amrollah submitted his Form I-589 (Application for Asylum and Withholding of Removal).[11]  On April 20, 1999, an Immigration Judge ("IJ") held a hearing.[12]  After hearing Amrollah's testimony and the Government's evidence, the IJ found Amrollah generally credible and that determined that "[a]lthough [he]

---

[4]Administrative record (A.R.) at 239.

[5]*Id*. at 246.

[6]*Id.*

[7]*Id*. at 247.

[8]*Id*. at 27.

[9]*Id*. at 150.

[10]*Id*. at 100.

[11]*See id*. at 235–47.

[12]*See id*. at 42–102.

would have preferred more…documentation and…testimony," Amrollah was entitled to relief from removal and asylum under 8 U.S.C. § 1158.[13]

On July 11, 2000, Amrollah filed Form I-485 (Application to Register Permanent Residence of Adjust Status) seeking permanent residency under 8 U.S.C. § 1159.[14]  Based on Amrollah's statements about his support/involvement with the "mojahedin movement," the Government placed Amrollah's application on adjudicatory hold to determine whether Defendant Janet Napolitano (Secretary of Homeland Security) should exercise her authority, in consultation with the Secretary of State and the Attorney General, to exempt Amrollah from inadmissibility.[15] After nearly nine years without action taken on the adjustment application, Amrollah sought mandamus in this Court in December 2009.[16]

In response, the Government issued a Notice of Intent to Deny Plaintiff's Application.[17] After allowing Amrollah time to respond,[18] United States Customs and Immigration Services ("USCIS") denied Amrollah's adjustment application on June 1, 2010.[19]  In doing so, the USCIS interpreted Amrollah's admission in his asylum application that he supported the "mojahedin movement" as meaning that he supported the Mujahadin-e Khalq Organization ("MeK") as there

---

[13]*Id*. at 35–36.

[14]*Id*. at 107–10.

[15]*See* 8 U.S.C. § 1182(d)(3)(B)(I).

[16]Docket entry #1.

[17]A.R. at 6–8.

[18]*See id*. at 10–25.

[19]*Id*. at 1–5.

is no other known "mojahedin movement" in Iran.[20]  Because the MeK has been a State Department-designated Foreign Terrorist Organization since October 8, 1997 due to its "advocat[ing] the violent overthrow of the Iranian regime and…responsib[ility] for the assassination of several U.S. military personnel and civilians in the 1970s,[21] the USCIS found Amrollah inadmissible under  based on 8 U.S.C. § 1182(a)(3)(B)(i)(I) for "engaging in terrorist activities as defined by [§ 1182(a)(3)(B)](iv)(VI)(dd)."[22]

Amrollah has since amended his complaint to seek judicial review of the USCIS's determination that he is inadmissible under the Administrative Procedures Act, 5 U.S.C. § 704, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

**Standard of review.**  "The Administrative Procedure Act ("APA") allows a federal court to overturn an agency's ruling only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole."[23] In conducting its review, the court must presume the validity of the agency decision; the plaintiff's bears the burden to overcome the presumption.[24]  "The agency's factual findings are reviewed to determine only whether they are supported by substantial evidence."[25]  "Substantial

---

[20]*Id*. at 3.

[21]*Id*. at 2–3.

[22]*Id*. at 4.

[23]*Buffalo Marine Servs. v. United States*, 663 F.3d 750, 753 (5th Cir. 2011) (internal quotation marks omitted); *see* 5 U.S.C. § 706(2)(A).

[24]*Buffalo Marine*, 663 F.3d at 753.

[25]*Id*. (internal quotation marks omitted); *see also Demiraj v. Holder*, 631 F.3d 194, 197 (5th Cir. 2011).

evidence is that relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding."[26]

**Discussion.** Amrollah argued that the USCIS erroneously denied his adjustment application for two reasons. First, Amrollah contended "[t]he doctrine of collateral estoppel bars the government from re-litigating the issue of whether Amrollah engaged in terrorist activity" based on the IJ's 1999 asylum grant.[27] Second, Amrollah maintained substantial evidence does not support the USCIS's determination that Amrollah engaged in terrorist activities.[28]

1. <u>Collateral estoppel.</u> Amrollah argued that in granting him asylum in 1999, the IJ necessarily found that Amrollah did not engage in terrorist activity because had the IJ found otherwise, the IJ would have been bound to deny asylum based on 8 U.S.C. § 1158(b)(2)(A)(iv) (1999). "Issue preclusion or collateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."[29] Section 1158(b)(2) sets forth grounds for denying asylum where the Attorney General has determined that the asylum-seeker is a refugee.[30] Specifically, subsection (iv) states that the Attorney General may deny asylum if "there are reasonable grounds for regarding the alien as a danger to the security of the United States."[31] Amrollah argued that

---

[26]*La. Ins. Guar. Ass'n v. Dir., Office of Workers' Compensation Programs*, 614 F.3d 179, 185 (5th Cir. 2010) (internal quotation marks omitted).

[27]Docket entry #43, at 3; *see also* docket entry #38, at 8–11.

[28]Docket entry #38, at 11–19; docket entry #43, at 8–11.

[29]*Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (en banc).

[30]8 U.S.C. § 1158(b)(2) (1999).

[31]*Id*. at § 1158(b)(2)(A)(iv) (1999).

subsection (iv) incorporates the bar against admitting an alien who

> (I) has engaged in a terrorist activity, (II) a consular officer or the Attorney
> General knows, or has reasonable ground to believe, is engaged in or is likely to
> engage after entry in any terrorist activity (as defined in clause (iii)), (III) has,
> under circumstances indicating an intention to cause death or serious bodily harm,
> incited terrorist activity, (IV) is a representative (as defined in clause (iv)) of a
> foreign terrorist organization, as designated by the Secretary under section 1189 of
> this title, or (V) is a member of a foreign terrorist organization, as designated by
> the Secretary under section 1189 of this title, which the alien knows or should
> have known is a terrorist organization.[32]

Amrollah's argument fails because collateral estoppel does not apply where "the legal standards governing their resolution are 'significantly different.'"[33]  As the Government emphasized, "the USA PATRIOT Act of 2001…broadened the definition of a "terrorist organization" by adding two new categories of terrorist organizations—including a new subsection (III) of undesignated terrorist organizations, referred to as Tier III organizations."[34]  The definition of a Tier III terrorist organization is broad: "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in" terrorist activities as defined by 8 U.S.C. § 1182(a)(3)(B)(iii).[35]  The USCIS denied Amrollah adjustment under 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd).  Subsection (dd) deals with providing "material support" for a Tier III terrorist organization "or to any member of such an organization."[36]  Amrollah cannot claim that the IJ necessarily decided that he did not engage in terrorist activity

---

[32]*Id*. at § 1182(a)(3)(B)(i) (1999).

[33]*Pace*, 403 F.3d at 290 (quoting 18 James Wm. Moore et al., Moore's Fed. Practice § 132.02[2][h] (3d ed. 2001)).

[34]Docket entry #37, at 7.

[35]8 U.S.C. § 1182(a)(3)(B)(vi)(III).

[36]*Id*. at § 1182(a)(3)(B)(iv)(VI)(dd).

based on the 1999 version of the immigration laws because the category of organization that the

USCIS found he supported did not exist then.[37]   Even if Amrollah showed his support/

involvement of terrorism was actually litigated and necessary to the IJ's 1999 decision, he could

not show the issue is identical or the same because of the substantial, intervening change in the

law.[38]   As a consequence, collateral estoppel is unavailable to Amrollah.

    2.   <u>Substantial evidence.</u>   Absent collateral estoppel, Amrollah is left with the argument

that there is insufficient evidence to justify the USCIS's determination that he materially

supported a terrorist organization.   Amrollah admitted in his asylum application to "provid[ing]

medical assistance to the mojahedin movement"[39] by supplying prescriptions to the group.[40]

During his hearing before the IJ, Amrollah testified consistent with this admission.   Based on this

involvement, the USCIS found that the group Amrollah supported was the MeK because: (1)

there is no other known "mojahedin movement" in Iran, (2) "during [his] asylum hearing the

attorney who questioned [him] referred to the group [he] supported as the MeK but [he] did not

object or correct him, and (3) "[e]ven if the 'mujahedin movement' [he] referenced in [his]

asylum application and at [his] asylum hearing in the immigration court is not the same as the

MeK, it still qualifies as a terrorist organization as defined at INA section 212(a)(3)(B)(vi)(III)."[41]

Although Amrollah's admission can be interpreted differently, the admission nevertheless

---

[37]*Compare id*. at § 1182(a)(3)(B)(iii) (1999) *with* § 1182(a)(3)(B)(vi) (2011).

[38]*Pace*, 403 F.3d at 290.

[39]A.R. at 239.

[40]*Id*. at 246.

[41]*Id*. at 3.

constitutes more than a scintilla of evidence supporting the USCIS's determination that Amrollah materially supported a terrorist organization.  Because the "substantial evidence" standard requires only enough evidence to cause a reasonable person to accept the fact finding, and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence,"[42] substantial evidence supports the USCIS's determination.

**Recommendation**.  Because the USCIS's determination is supported by substantial evidence, and because collateral estoppel is unavailable to Amrollah in light of the substantial, intervening change in the law, the USCIS's determination is not arbitrary and capricious.  Therefore, I recommend granting the defendants' motion for summary judgment (docket entry #37) and denying the plaintiff's motion (docket entry #38).  If the court accepts this recommendation, the court can enter a final summary judgment in favor of the defendants.

**Instructions for service and notice of right to object/appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[43]

---

[42] *Arif v. Mukasey*, 509 F.3d 677, 679 (5th Cir. 2007) (internal quotation marks omitted); *see also Blue Circle Cement Co. v. NLRB*, 41 F.3d 203, 206 (5th Cir. 1994) ("We will defer to plausible inferences the ALJ drew from the evidence, even though we might reach a contrary result were we deciding this case de novo." (internal quotation marks omitted)).

[43] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

Such party shall file the objections with the clerk of the court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[44]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[45]

**SIGNED** on February 22, 2012.

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[44]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[45]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).